# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, JR., Trustee, )<br><br>Plaintiffs, )<br><br>v. )<br><br>CARGO CARRIERS, INC., a dissolved North Carolina Corporation, DONALD C. FISHER, MARY R. FISHER, IRVIN W. ALBERT, MICHAEL S. ALBERT, EDGAR B. HINKLE, JR., JULIUS S. YOUNG, and CHARLES J. YOUNG, )<br><br>Defendants. ) | 1:11CV461 |

## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge on the following motions: (1) Defendant Cargo Carriers, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket Entry 59); (2) Motion to Dismiss of Defendants Donald C. Fisher, Mary R. Fisher, Michael S. Albert, Irvin W. Albert, Edgar B. Hinkle, Jr., Julius S. Young, and Charles J. Young for Failure to State a Claim Pursuant to Rule 12(b)(6) (Docket Entry 61); (3) Plaintiffs' Motion for Leave to File Amended Complaint (Docket Entry 65); and (4) Plaintiffs' Motion to Strike or Extend the May 7 Response Deadline with Respect to Defendants' Motions to Dismiss (Docket Entry 66). For the reasons that follow, Plaintiffs' Motion for Leave to Amend will be granted, Plaintiffs' Motion to Strike will be denied as moot, and Defendants' Motions to Dismiss should be denied.

## I.  Factual Background

The Complaint identifies Plaintiffs as a multiemployer pension fund ("the Pension Fund") and one of its current trustees. (Docket Entry 1, ¶¶ 4-5.)  According to the Complaint, Defendant Cargo Carriers is a dissolved North Carolina corporation.  (Id. ¶ 7.) The Complaint identifies the remaining defendants aa individuals ("Individual Defendants") involved in the ownership and management of Cargo Carriers.  (Id. ¶¶ 12-19, 26-27, 44-45, 48-49.) Plaintiffs brought this action against Defendants for "collection of withdrawal liability, interest, and penalties incurred by [Defendants] as a result of withdrawal from a multiemployer pension plan." (Id. ¶ 1.)

Under the Multiemployer Pension Plan Amendment Act ("MPPAA"), when an employer withdraws from a multiemployer pension plan, "it must pay withdrawal liability in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits . . . ." (Docket Entry 65, ¶ 5 (citing Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 217 (1986), and 29 U.S.C. §§ 1381, 1391); accord Docket Entry 69 at 1.)  All "trades or businesses under 'common control' are treated as constituting a single 'employer' for withdrawal liability purposes, and each such trade or business is jointly and severally liable for the withdrawal liability." (Docket Entry 65, ¶ 5 (citing Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 120 (4th Cir. 1991); accord Docket Entry 69 at 2.)  In order to be considered a "trade or business" for purposes of the MPPAA, an organization must "engage[] in an

-2-

activity (1) with continuity and regularity and (2) for the primary purpose of income or profit." <u>Central States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC</u>, 668 F.3d 873, 878 (7th Cir. 2011) (citing <u>Commissioner of Internal Revenue v. Groetzinger</u>, 480 U.S. 23, 35 (1987)).

The Complaint alleges that Billings Freight, a North Carolina corporation, was "bound by collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters under which Billings Freight was required to make contributions to the Pension Fund on behalf of certain of its employees." (Docket Entry 1, ¶ 20.) Billings Freight allegedly was a wholly owned subsidiary of Billings Transportation (<u>id.</u> ¶ 21), as was Billings Express (<u>id.</u> ¶ 23). The Complaint asserts that

> for a period of time before September 2005 . . . until around September 2005 when Talmadge Silversides transferred her shares of stock in Cargo Carriers . . ., Cargo Carriers was a trade or business under common control with Billings Transportation, Billings Freight, Billings Express and Metro Motor ["the Billings Controlled Group" or "the Group"] within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder.

(<u>Id.</u> ¶ 28.) Put differently, the same individuals "collectively owned at least 80 percent of the total combined voting power of all classes of stock entitled to vote . . . and/or at least 80 percent of the total value of shares of all classes of stock" of each entity making up the controlled group. (<u>Id.</u> ¶¶ 22, 24, 26.)

In September of 2005, Talmadge Silversides allegedly "transferred her shares of stock in Cargo Carriers to her children,

-3-

Defendants Donald Fisher and Mary Fisher" (id. ¶ 27), thereby causing Cargo Carriers to "cease being under common control with Billings Transportation, Billings Freight, Billings Express and Metro Motor . . ." (id. ¶ 30). The Complaint alleges that a "principal purpose" of the stock transfer was "to cause Cargo Carriers to evade or avoid withdrawal liability owed by Cargo Carriers to the Pension Fund." (Id.) As a result, according to the Complaint, "[p]ursuant to section 4212(c) of ERISA, 29 U.S.C. § 1392(c), the 2005 transfer of stock of Cargo Carriers by Talmadge Silversides to Defendants Donald Fisher and Mary Fisher may be disregarded in determining and collecting the withdrawal liability owed by" the Billings Controlled Group, including Cargo Carriers. (Id. ¶ 31.)[1]

On July 2, 2006, the Billings Controlled Group allegedly "effect[ed] a 'complete withdrawal' from the Pension Fund within the meaning of section 4203 of ERISA, 29 U.S.C. § 1383" (id. ¶ 34), incurring withdrawal liability in the amount of $18,063,796.63 (id. ¶ 35). Because, according to the Complaint, the September 2005 transaction by Talmadge Silversides may be disregarded, Plaintiffs contend that Cargo Carriers remained a member of the Billings Controlled Group for purposes of the MPPAA when the Group incurred liability on July 2, 2006. (Id. ¶¶ 32–35.)

---

[1]     Section 1392(c) states: "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

-4-

The Complaint alleges that the Billings Controlled Group received at least two demands for payment from the Pension Fund in August of 2006, to which the Group did not respond. (<u>Id.</u> ¶¶ 36-39.) The Group failed to "timely initiate arbitration pursuant to section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1)" (<u>id.</u> ¶ 38) and, as a result, fell into default (<u>id.</u> ¶ 39). The Complaint claims that "[a]ll members of the Billings Controlled Group, including Defendant Cargo Carriers, are jointly and severally liable to the Pension Fund for the withdrawal liability." (<u>Id.</u> ¶ 40.)

Since 2006, Billings Transportation, Billings Freight, Billings Express, and Metro Motor have been "debtors in jointly administered Chapter 7 bankruptcy cases which have been proceeding in the United States Bankruptcy Court for the Middle District of North Carolina." (<u>Id.</u> ¶ 41.) The Complaint further asserts that, "[b]y no later than December 31, 2006, Cargo Carriers had actual knowledge of the notice and demand for payment of withdrawal liability issued by the Pension Fund to the Billings Controlled Group." (<u>Id.</u> ¶ 50.)

As a result of the foregoing allegations, Plaintiffs now pursue claims in this Court for: (1) defaulted withdrawal liability against Cargo Carriers (Count I); (2) withdrawal liability against Individual Defendants under the MPPAA's evade-or-avoid provision (Count II); (3) withdrawal liability against Individual Defendants under a trust fund theory (Count III); and (4) liability against Individual Defendants for fraudulent conveyances (Count IV).

-5-

## II.  Procedural Background

This case originated in the United States District Court for the Northern District of Illinois.  (<u>See</u> Docket Entry 1.) Individual Defendants moved to dismiss for lack of jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Docket Entry 18.)  Defendant Cargo Carriers also moved to dismiss for failure to state a claim (Docket Entry 20) and sought a change of venue (Docket Entry 16).  Plaintiffs responded.  (Docket Entries 31, 32.)  Defendant Cargo Carriers replied.  (Docket Entries 33, 35.)  The United States District Court for the Northern District of Illinois thereafter transferred the case to this Court.  (Docket Entry 40.)

Defendants re-filed their instant Motions to Dismiss before this Court.  (Docket Entries 59, 61.)  Plaintiffs then filed their instant Motion for Leave to File Amended Complaint.  (Docket Entry 65.)  Plaintiffs then moved to strike the deadline for their response to the Motions to Dismiss or to extend it pending a ruling on their Motion for Leave.  (Docket Entry 66, ¶ 6.)  Defendants objected to the Motion to Strike.  (Docket Entry 67.)  Plaintiffs nevertheless timely responded to the instant Motions to Dismiss. (Docket Entry 68.)  Defendants likewise responded to Plaintiffs' Motion for Leave.  (Docket Entry 69.)  Both sides also filed replies.  (Docket Entries 70, 71.)

-6-

*A.  Motion for Leave to File Amended Complaint (Docket Entry 65)*

Plaintiffs request leave to amend their Complaint to include further allegations supporting their contention that Cargo Carriers qualified as a trade or business and to add new defendants. (Docket Entry 65, ¶¶ 9-13.)  Defendants oppose such action on grounds of undue delay and futility.  (Docket Entry 69 at 8-15.)

Rule 15(a) of the Federal Rules of Civil Procedure appears to entitle Plaintiffs to amend their Complaint as a matter of course. It states:

> A party may amend its pleading once as a matter of course within:
>
> . . .
>
> (B)if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1)(B).  Plaintiffs filed their instant Motion for Leave ten days after Defendants filed their instant Motions to Dismiss pursuant to Rule 12(b)(6), well within the 21-day time period allowed for amendment as a matter of course.  Nothing in Rule 15(a) indicates that a plaintiff may not amend a pleading where, as here, the dismissal motions were refiled upon transfer to a new court.  According to the advisory committee notes on the amendment to Rule 15(a) that added the provision allowing amendment once as a matter of course following a motion under Rule 12(b), "[a] responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite

-7-

determination of issues that otherwise might be raised seriatim. It also should advance other pretrial proceedings." Fed. R. Civ. P. 15(a)(1) advisory committee's notes, 2009 Amend. Allowing amendment as a matter of course in the instant case will further those goals.

Alternatively, the Court (per the undersigned Magistrate Judge)[2] grants Plaintiffs leave to amend their Complaint even if they may "amend [their] pleading only with . . . the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). Under that provision, "[t]he [C]ourt should freely give leave when justice so requires." Id. This standard permits the Court some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." Foman v. Davis, 371 U.S. 178, 182 (1962). Indeed, "[t]he law is well settled that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be

---

[2]     For reasons stated in Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n. 8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned United States Magistrate Judge will enter an order, rather than a recommendation, regarding Plaintiffs' instant Motion for Leave. See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n. 2 (4th Cir. 2011) ("Everett moved for leave to amend her complaint . . . to add . . . a defendant based on information obtained during discovery, and to add a state-law claim of medical malpractice against [that new defendant]. After a hearing, the magistrate judge denied Everett's motion. Everett timely objected, thereby preserving the issue for review by the district court. . . . [T]he district court could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law.' Fed. R. Civ. P. 72(a); 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2010).").

futile." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 242 (4th Cir. 1999).

## *1.  Undue Delay*

Defendants contend that "Plaintiffs have had actual knowledge of the material that they now want to add since no later than July 31, 2008 . . . ." (Docket Entry 69 at 9.)  They allege that

> it is [therefore] undue delay for [Plaintiffs] to wait nearly 4 years after the depositions [from which Plaintiffs obtained the material], and also more than 17 months after filing the original Complaint, to attempt to include it [in] an Amended Complaint . . ., particularly after they have taken the position that their original Complaint is sufficient.

(<u>Id.</u>)

"Delay alone is an insufficient reason to deny leave to amend. Rather, the delay must be accompanied by prejudice, bad faith, or futility." <u>Edwards</u>, 178 F.3d at 242 (internal citations omitted) (citing <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986)).  Defendants do not assert any prejudice or bad faith as a result of the delay in this case.  Rather, they rely on <u>Logar v. W. Va. Univ. Bd. of Governors</u>, No. 1:10CV201, 2012 WL 243692 (N.D.W. Va. Jan. 25, 2012) (unpublished), in which the court denied a motion for leave to amend on the grounds of undue delay.

In <u>Logar</u>, however, plaintiffs moved to amend their complaint <u>after</u> entry of judgment against them.  <u>Id.</u> at *1.  The court noted that, although the Fourth Circuit rule treating delay alone as an insufficient reason to deny leave to amend applies even in post-judgment situations, "the post-judgment climate is a major factor in the consideration of the other factors relevant to the inquiry,

-9-

most especially those of bad faith and prejudice to the opposing party." Id. at *4 (citing Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006), and Adams v. Gould, 739 F.2d 858, 864 (3d Cir. 1984)). The court further pointed out that

> unexcused delay in filing a motion for leave to amend [is] a sufficient basis for post-judgment denial of such a motion because, "much of the value of summary judgment procedure . . . would be dissipated" if a movant were allowed to rely on one theory until the district court finds that theory "unsound," then to return with another theory after unfavorable judgment is entered.

Id. at *5 (emphasis added) (quoting Vielma v. Eureka Co., 218 F.3d 458, 469 (5th Cir. 2000)). The court cited "undue, unexcused delay, as well as prejudice to the opposing parties" in finding that the interests of justice "weigh[] in favor of the finality of the judgment" and denial of leave to amend. Id. at *10.

The concerns expressed by the court in Logar do not justify the same result in the instant case. Here Plaintiffs filed their instant Motion for Leave just ten days after Defendants filed their instant Motions to Dismiss. (See Docket Entries 59, 61, 65.) Although the Parties had fully briefed matching motions in the Northern District of Illinois, that court rendered no decision. Defendants' arguments regarding undue delay thus do not warrant denial of Plaintiffs' instant Motion for Leave.

## 2. Futility

Defendants assert that Plaintiffs' proposed amendments "still do not sufficiently allege that Cargo Carriers was a trade or business [within the meaning of 29 U.S.C. § 1301(b)(1)] at the time of withdrawal on July 2, 2006." (Docket Entry 69 at 9-10.) For

-10-

this reason, they argue that "leave to [] amend the Complaint []
should be denied on the grounds of futility." (Id. at 13.)

"An amendment would be futile if the amended claim would fail
to survive a motion to dismiss for failure to state a claim
pursuant to Federal Rule of Civil Procedure 12(b)(6)." Syngenta
Crop Prod., Inc. v. EPA, 222 F.R.D. 271, 278 (M.D.N.C. 2004). A
plaintiff fails to state a claim when the complaint does not
"contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
"Where a complaint pleads facts that are 'merely consistent with'
a defendant's liability, it 'stops short of the line between
possibility and plausibility of 'entitlement to relief.'" Id.
(quoting Twombly, 550 U.S. at 557). This standard "demands more
than an unadorned, the-defendant-unlawfully-harmed-me accusation."
Id. In other words, "the tenet that a court must accept as true
all of the allegations contained in a complaint is inapplicable to
legal conclusions. Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice." Id.[3] "Leave to amend, however, should only be denied on

---

[3] "[D]etermining whether a complaint states on its face a
plausible claim for relief and therefore can survive a Rule
12(b)(6) motion . . . requires the reviewing court to draw on its
judicial experience and common sense." Francis v. Giacomelli, 588
F.3d 186, 193 (4th Cir. 2009). Of course, in applying the Rule
12(b)(6) standard while reviewing a proposed amendment for
futility, the question of "[w]hether [a litigant's] allegations
(continued...)

-11-

the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510 (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)).

In their proposed Amended Complaint, Plaintiffs allege that, "[a]t all times from before 2000 through at least the July 2, 2006 date of withdrawal, Cargo Carriers was a trade or business." (Docket Entry 65-1, ¶ 49.) In addition, Plaintiffs assert that Cargo Carriers still engaged in a number of business functions at the time of withdrawal "with the purpose of generating income and/or profit." (Id. ¶¶ 50, 52.) Plaintiffs also claim that "Cargo Carriers did not file for dissolution until 2008." (Id. ¶ 51.) Defendants maintain that "[t]hese proposed allegations still do not amount to an effective allegation that Cargo Carriers continually and regularly conducted business activity for the purpose of income or profit on July 2, 2006." (Docket Entry 69 at 11.)

Plaintiffs' proposed Amended Complaint is not "clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510. Whether an enterprise is a "trade or business" within the meaning of 29 U.S.C. § 1301(b)(1) "is a question of fact." Connors v. Incoal, Inc., 995 F.2d 245, 251 (D.C. Cir. 1993) (citing Central

---

[3](...continued)
. . . are ultimately provable or accurate is not an issue before the Court," Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL 1427592, at *11 n.10 (M.D.N.C. Apr. 8, 2010) (unpublished) (internal quotation marks omitted).

-12-

States, Se. & Sw. Areas Pension Fund v. Slotky, 956 F.2d 1369, 1373 (7th Cir. 1992)). Despite Defendants' contentions, Plaintiffs' amendments allege sufficient facts to support their contention that Cargo Carriers was a "trade or business" at the time of withdrawal.

Defendants rely on Connors v. Incoal Inc., No. 89-7058, 907 F.2d 1227 (Table), 1990 WL 102739 (D.C. Cir. July 20, 1990) (unpublished), for the assertion that "'a business in its phase-out stages [cannot be held] liable for debts incurred by another firm with which it no longer conducted business.'" (Docket Entry 69 at 12 (quoting Connors, 1990 WL 102739, at *3).) However, in Connors, the plaintiffs themselves alleged that the only action the defendant partnership was undertaking at the time of withdrawal was "distribut[ion of] its partnership assets, an administrative task typically associated with winding up of business affairs." Connors, 1990 WL 102749, at *3. The partnership dissolved two months before the withdrawal date, and the court held that a partnership in such a position is "liable only for pre-dissolution debts." Id.

In the instant case, on the other hand, Plaintiffs allege that, "[a]t all times from before 2000 through at least the July 2, 2006 date of withdrawal, Cargo Carriers was a trade or business." (Docket Entry 65-1, ¶ 49.) They further allege that

> during [the] entire time period from even before 2000 and
> continuing past July 2, 2006 and into 2008, Cargo
> Carriers continually and with regularity performed
> various business functions, including but not limited to
> the following: . . . maintained its status as a North
> Carolina corporation from before 2000 and past July 2,
> 2006; employed corporate officers from before 2000 and

-13-

> past July 2, 2006; maintained at least one bank account
> from before 2000 and past July 2, 2006; invoiced
> companies, pursued collection of accounts receivable and
> collected accounts receivable from before 2000 and past
> July 2, 2006; [and] liquidated assets beginning in or
> around August 2005 and made distributions to shareholders
> from 2005 and past July 2, 20[0]6 . . . .

(Id. ¶ 50.) In addition, Plaintiffs assert that "Cargo Carriers carried out all of the business functions referenced in paragraph 50 above with the purpose of generating income and/or profit" (id. ¶ 52), and that "Cargo Carriers did not file for dissolution until 2008" (id. ¶ 51).

Defendants further point to cases in which courts determined that certain of the business activities Plaintiffs ascribe to Cargo Carriers fail to constitute conduct of a trade or business. (Docket Entry 69 at 10-12.)[4] However, none of these cases support

---

[4] For example, in Central States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC, 738 F. Supp. 2d 840 (N.D. Ill. 2010), aff'd, 668 F.3d 873 (7th Cir. 2011), the court pointed out that the Seventh Circuit declined to adopt a per se rule that formal business organizations are "trades or businesses." Id. at 848 (citing McDougall v. Pioneer Ranch Ltd. Partnership, 494 F.3d 571, 577 (7th Cir. 2007)). It noted, however, that the Seventh Circuit did find the existence of a formal partnership "'highly relevant,'" as it "'stated the intention of forming a business' and 'constitute[d] a declaration against interest.'" Id. (quoting McDougall, 494 F.3d at 577-78). Defendants also rely on Government Dev. Bank for P.R. v. Holt Marine Terminal, Inc., 765 F. Supp. 2d 710 (E.D. Pa. 2011), which they state stands for the proposition that evidence that a company "'went dormant' and no longer conducted construction activities at the time of withdrawal . . . was enough to support a finding that the company was not 'an active trade or business at the time [the plaintiff] incurred withdrawal liability." (Docket Entry 68 at 11 (quoting Government Dev. Bank, 765 F. Supp. 2d at 716).) However, the court in that case was considering the plaintiffs' motion for summary judgment. Government Dev. Bank, 765 F. Supp. 2d at 712. The court merely determined that "reasonable jurors could differ on the question of whether [the defendant] was an active trade or business" at the

(continued...)

-14-

Defendants' contention that Plaintiffs' assertions, taken together, fail to provide sufficient factual support for their claims. In sum, Plaintiffs have alleged factual matter adequate to sustain their assertion that Defendant Cargo Carriers qualified as a "trade or business" at the time of withdrawal, such that, on that issue, Plaintiffs' instant Motion for Leave does not fail on grounds of futility.

Defendants additionally contend that Plaintiffs' proposed addition of Southmont Farm, Southmont Properties, Talmadge Silversides, and Sidney Beck as parties fails on futility grounds. (Id. at 13-15.) Defendants' futility claim as to the addition of these defendants rests on Defendants' contention that paragraph 79 of Plaintiffs' proposed Amended Complaint (stating that Individual Defendants "collectively owned at least 80 percent of the profits interest and/or capital interest of the general partnership Southmont Farm") "is false." (Id. at 13.) As the applicable standard assesses whether the amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Iqbal, 556 U.S. at 678 (emphasis added) (internal citations omitted) (quoting Twombly, 550 U.S. at 570), Defendants' challenge in this regard lacks merit.

---

[4](...continued)
time of withdrawal, rendering it "unable to grant summary judgment to the plaintiffs . . . ." Id. at 716.

<u>*B. Motions to Dismiss (Docket Entries 59, 61)*</u>

In their Motion to Strike or Extend the May 7 Response Deadline with Respect to Defendants' Motions to Dismiss (Docket Entry 66), Plaintiffs argue that, "[a]ssuming the Court grants Plaintiffs' Motion to Amend Complaint, the Defendants' Motions to Dismiss will become moot." (<u>Id.</u> ¶ 6.) Defendants' response to this assertion states, in its entirety:

> Plaintiffs' pending Motion to Amend Complaint ([Docket Entry] 65), filed on April 23, 2012, seeks to add allegations in an attempt to address Defendants' Motions to Dismiss, of which Plaintiffs have been fully informed since March 1, 2011. Plaintiffs have already argued in their original Responses to Defendants' Motions to Dismiss that no new allegations are necessary to state a claim for relief.
>
> Defendants' response to Plaintiffs' Motion to Amend Complaint is due on May 17, 2012. Defendants will oppose Plaintiffs' Motion to Amend Complaint.

(Docket Entry 67, ¶¶ 9-10 (internal paragraph numbering omitted).)

For reasons detailed in <u>Kinetic Concepts, Inc. v. ConvaTec Inc.</u>, No. 1:08CV00918, 2010 WL 1667285, at *6-8 & nn. 12, 13 (M.D.N.C. Apr. 23. 2010) (unpublished), Defendants' failure to respond to Plaintiffs' argument regarding the effect of the proposed Amended Complaint on the Motions to Dismiss constitutes a concession. Moreover, as discussed in the previous section concerning futility, Plaintiffs' proposed Amended Complaint adequately addresses Defendant Cargo Carriers' contentions (echoed in Individual Defendants' Motion to Dismiss (Docket Entry 62 at 4)) regarding the status of Cargo Carriers as a "trade or business" at

-16-

the time of withdrawal, which contentions represent Cargo Carriers'
only argument in its Motion to Dismiss. (Docket Entry 60 at 5-8.)

The only challenge apparently not rendered moot by the
proposed Amended Complaint concerns Individual Defendants' claim in
their Motion to Dismiss that they cannot be held liable under a
theory of "evade or avoid" liability as set out in Count II of the
Complaint. (Docket Entry 62 at 5-10.) Individual Defendants
assert that "Plaintiffs' claims to recoup assets of Cargo Carriers
[distributed to Individual Defendants] necessarily depend first
upon whether [Plaintiffs] obtain a judgment against Cargo Carriers.
In other words, the Plaintiffs' claims against the Individual
Defendants are not direct." (Id. at 5.) Individual Defendants
point to a number of cases to support their claim that "ERISA does
not provide an enforcement mechanism for collecting judgments."
(Id. at 6 (citing Peacock v. Thomas, 516 U.S. 349, 353 (1996).)
They further state that "29 U.S.C. 1392(c) does not establish an
independent cause of action for 'evade or avoid liability.'" (Id.
at 7.)

Individual Defendants cite a number of somewhat analogous
cases to support their argument that Section 1392(c) exists to
"deal with circumstances in which a transaction has fractured a
controlled group, and not with situations in which the pension plan
is pursuing shareholders for alleged fraudulent conveyances" (id.
at 8-9) and that "Section 1392(c) must not be stretched too far"
(id. at 9). The undersigned Magistrate Judge, however, finds
persuasive two cases presented by Plaintiffs that address the exact

-17-

situation raised by Count II, <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049 (2d Cir. 1993), and <u>Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Illinois Range, Inc.</u>, 186 F.R.D. 498 (N.D. Ill. 1999).

In the first of these cases, the Second Circuit reversed the district court's judgment against plaintiffs for lack of subject matter jurisdiction over non-employer defendants. <u>Herrmann</u>, 9 F.3d at 1055-56. The employer that contributed to the pension fund entered into an acquisition agreement with another entity by which that entity "purchased [the employer's] assets, but did not assume liability, actual or contingent, whatsoever, including, without limitation, for any withdrawal liability of [the employer] under any multiemployer pension plan." <u>Id.</u> at 1053 (internal quotation marks omitted). The president and sole shareholder of the employer received a signing bonus, service arrangement, payment for a covenant not to compete, and an extra bonus. <u>Id.</u> These transactions rendered the employer insolvent, allegedly for the purpose of evading or avoiding withdrawal liability. <u>Id.</u> In responding to the determination by the lower court that the president and buyer did not constitute employers under the MPPAA, the Second Circuit held:

> Reading sections 1451(a)(1) and 1392(c) together, if a pension fund (such as the Fund in this case) is adversely affected by the acts of any party who has attempted to "evade or avoid liability" under the MPPAA (such as [the employer and two non-employer defendants]), then the MPPAA shall be applied "without regard to such transaction." To calculate *and* collect liability, "without regard to such transaction," any assets that were transferred in order to "evade or avoid liability,"

-18-

as well as the parties to whom they were improperly transferred, must be within the reach of the statute. Further, to apply the MPPAA "without regard to such transaction," the transferor entity must be deemed to be in possession of improperly transferred assets. Those assets must therefore be recoverable from the parties to whom they have been illegitimately transferred. Those parties thus become "part[ies] under this subtitle" within the meaning of § 1451(a)(1).

Id. at 1056 (emphasis in original).

"The allegations in th[e second] case assert[ed] that it was an affirmative act of the [employer's] shareholders that induced the withdrawal liability of the corporation and that act was motivated by the shareholders attempting to evade and avoid withdrawal liability." Illinois Range, 186 F.R.D. at 501. Given those circumstances, the court determined that, "as dictated by 29 U.S.C. § 1392 and 29 U.S.C. § 1451, liable parties are not limited to employers." Id. Following the reasoning in Herrmann, the court determined that the "[i]ndividual [d]efendants are parties within the jurisdiction of the court because they are 'any party' whose acts have adversely affected the fund." Id. (quoting 29 U.S.C. § 1451).

As in the previously discussed cases, Plaintiffs have alleged sufficient facts to support a claim that Individual Defendants in the instant case acted in such a way as to "adversely affect[] the fund," id., and Individual Defendants therefore fall subject to liability under 29 U.S.C. § 1392(c). (See Docket Entry 1, ¶¶ 51-56.) Other courts recently likewise have followed the reasoning in Herrmann and/or Illinois Range under similar circumstances. See Sun Capital Partners III, LP v. New England Teamsters & Trucking

Indus. Pension Fund, 903 F. Supp. 2d 107, 120 n.3 (D. Mass. 2012); Einhorn v. Twentieth Century Refuse Removal Co., No. 11-1451 (JBS/AMD), 2011 WL 6779760, at *3-5 (D.N.J. Dec. 22, 2011) (unpublished); Operating Eng'rs & Pension Trust Fund v. Western Power & Equip. Corp., No. C 10-4460 PJH, 2011 WL 2516775, at *3-4 (N.D. Cal. June 23, 2011) (unpublished).

### C. Motion to Strike or Extend Deadline (Docket Entry 66)

After moving to amend their Complaint, Plaintiffs filed the instant Motion to Strike or Extend Response Deadline (Docket Entry 66) with respect to Defendants' Motions to Dismiss. They requested the following:

> Since Plaintiffs intend to seek relief under their proposed amended complaint, Plaintiffs request that their May 7 deadline to respond to Defendants' Motions to Dismiss . . . be stricken, or at least extended pending a ruling with respect to Plaintiffs' Motion to Amend Complaint. Assuming the Court grants Plaintiffs' Motion to Amend Complaint, the Defendants' Motions to Dismiss will become moot.

(Id. ¶ 6.) Nevertheless, Plaintiffs timely responded to Defendants' Motions to Dismiss (see Docket Entry 68), thus rendering their request for extension of time moot.

### IV. Conclusion

Plaintiffs' instant Motion for Leave to Amend Complaint will be granted as a matter of course or, alternatively, for lack of any grounds warranting denial of leave. This action moots Defendant Cargo Carriers' Motion to Dismiss and the matching portion of Individual Defendants' Motion to Dismiss with respect to the "trade

-20-

or business" issue.  In addition, Individual Defendants' separate argument that Count II fails to state a claim lacks merit.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File Amended Complaint (Docket Entry 65) is **GRANTED.**  Plaintiffs shall file an Amended Complaint in substantially the same form as Exhibit A to their instant Motion for Leave by July 29, 2013.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (Docket Entry 66) is **DENIED** as moot.

**IT IS THEREFORE RECOMMENDED** that Defendant Cargo Carriers' Motion to Dismiss (Docket Entry 59) be denied as moot.

**IT IS FURTHER RECOMMENDED** that Individual Defendants' Motion to Dismiss (Docket Entry 61) be denied (in part as moot).


　　　　　　　　　/s/ L. Patrick Auld
　　　　　　　　　　**L. Patrick Auld**
　　　　　**United States Magistrate Judge**

July 22, 2013